UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANDREW FOSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Docket No. 06-CV-153-P-S |
| CIRCUIT CITY STORES, INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER ON MOTION TO COMPEL ARBITRATION AND TO STAY THE PROCEEDINGS**

Before the Court are Defendant Circuit City Stores, Inc.'s Motions to Compel Arbitration and to Stay the Proceedings (Docket #s 5 & 6). Plaintiff Andrew Foss ("Foss") objects to Defendant's Motion on the grounds of infancy and unconscionability of the agreement to arbitrate. For the reasons stated below, Defendant's Motions to Compel Arbitration and to Stay the Proceedings are DENIED.

**I.   BACKGROUND**

Circuit City Stores, Inc. ("Circuit City") is a national retailer of name brand consumer electronics, entertainment software and related goods. Headquartered in Richmond, Virginia, Circuit City operates over six hundred stores in forty-seven states, including a store in South Portland, Maine. Since September of 2003, Circuit City has maintained an online application system. As an individual progresses through the application, he or she is required to provide information and consent to various agreements. The initial screen provides: "Before beginning the employment application, we will ask for your Social Security Number, contact information, consent to arbitration, and consent to perform a background check." (Ex. A to Docket # 16.) At numerous

1

times throughout the application, applicants are provided with opportunities to withdraw their application and exit the system.

After consenting to proceed electronically, the applicant is presented with Circuit City's Dispute Resolution Agreement ("the Agreement"). The Agreement provides in pertinent part:

> [B]oth Circuit City and I agree to settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment and/or cessation of employment with Circuit City, exclusively by final and binding arbitration before a neutral Arbitrator. By way of example only, such claims include claims under federal, state and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the Family Medical Leave Act, the law of contract and law of tort. I understand that if I do file a lawsuit regarding a dispute arising out of or relating to my application or candidacy for employment, employment or cessation for employment, Circuit City may use this Agreement in support of its request to the court to dismiss the lawsuit and require me instead to use arbitration.

Id. at 4. The applicant is then required to consent to the Agreement. When an applicant is less than eighteen years of age, the applicant is directed to obtain parental consent to the Agreement. Without parental consent, a person under eighteen is exited from the system. Throughout the application process, the applicant is given numerous opportunities to review and print a copy of the Agreement. Notably, an applicant must read and consent to the Agreement in order to be considered for employment.

On October 7, 2004, Foss applied for a non-management position with the Circuit City store in South Portland, Maine via the online application system. Foss was born on February 4, 1987 and thus was under eighteen at the time he applied for employment with Circuit City. As a result, when Foss reached the Agreement, he was directed to obtain a parent's consent. Foss's employment application reflects that the name "Sharon Foss"

2

was entered and that this person consented to the Agreement. Id. at 6-7. Sharon Foss is Andrew Foss's mother. Sharon Foss, however, has declared: "I never signed the Circuit City Dispute Resolution Agreement or gave my consent to Andrew to enter into the Agreement." (Aff. of Sharon Foss, Attach. 3 to Docket # 8.) Esten Foss, Andrew Foss's father, likewise maintains that he never signed or consented to the Agreement. (Aff. of Esten Foss Jr., Attach. 2 to Docket # 8.) Furthermore, through an affidavit, Foss states that neither parent signed or consented to the Agreement. (Aff. of Andrew Foss, Attach. 1 to Docket # 8.) On October 14, 2004, before Foss was actually hired by Circuit City, he was presented with and signed a hard copy of the Agreement. Notably, Circuit City did not require a parent's signature on this hard copy.

Foss began working for Circuit City in South Portland in October of 2004. Foss turned eighteen on February 4, 2005. In October 2005, Foss was transferred to the Circuit City in Keene, New Hampshire. While employed at the Keene Circuit City, Foss alleges that his supervisor created a hostile work environment. In December 2005, Foss provided two weeks' notice that he was going to terminate the employment. He was asked to stay for another week and was promised a transfer to the store in South Portland. Foss maintains that as a result of informing management of the hostile environment, including calling the Human Resources Department of Circuit City, he was terminated on December 15, 2005. The reason provided to Foss for the termination was "improperly punching in." Foss alleges that this reason was a pretext and claims retaliation motivated his termination.

Foss filed this lawsuit on September 15, 2006 claiming a hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42

3

U.S.C. § 2000, et. seq., and the Civil Rights Act of 1991, 42 U.S.C. § 1981(a). Circuit City has moved to compel arbitration and to stay the proceedings pursuant to sections 2 and 4 of the Federal Arbitration Act ("FAA").[1]  9 U.S.C. §§ 2 & 4 (2006).

## II. DISCUSSION

### A. The Federal Arbitration Act

The FAA embodies a "liberal federal policy favoring arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991); Campbell v. General Dynamics Gov't Sys. Corp., 407 F.3d 546, 551 (1st Cir. 2005). Congress passed the FAA "to reverse the longstanding judicial hostility to arbitration agreements" and "to place arbitration agreements upon the same footing as other contracts." Gilmer, 500 U.S. at 24. Thus, section 2 of the FAA guarantees that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. In addition, section 4 provides a mechanism to compel arbitration by a party aggrieved by another party's refusal to arbitrate. Id. § 4. Section 4 directs that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id. Section 3 allows a court to stay the proceedings until the arbitration is complete. Id. § 3.

Circuit City petitions the Court to compel arbitration pursuant to section 4 on the ground that the parties have agreed to arbitrate "any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for

---

[1] The Court notes that section 3 of the FAA enables the Court to stay proceedings. See 9 U.S.C. § 3.

4

employment, employment and/or cessation of employment with Circuit City." Foss resists the motion to compel arbitration for two reasons. First, Foss asserts that because he was under eighteen when he signed the Agreement and he never ratified the Agreement in writing, no valid contract was ever formed. Second, Foss claims that even if there is a binding contract, the Agreement is unconscionable and therefore unenforceable. Because the Court finds the issue of infancy determinative, it does not reach the claim of unconscionability. At the threshold, the Court must determine whether the proper decision-maker for the claim of infancy is the court or the arbitrator.

### B. The Appropriate Decision-Maker

The Supreme Court has noted that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds Inc., 537 U.S. 79, 83 (2002) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). Thus, a party seeking to invoke the protections of sections 3 or 4 of the FAA must demonstrate, at a minimum, that "a valid agreement to arbitrate exists." Campbell, 407 F.3d at 552 (quoting Intergen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003)). Furthermore, "the purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts but not more so." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n.12 (1967). Thus, the determination of whether the court or the arbitrator is the proper decision-maker to resolve initial disputes turns on questions of contract formation and interpretation.

In Prima Paint Corp., the Supreme Court articulated two types of threshold challenges to an agreement to arbitrate. Id. at 403-04. The first category encompassed

5

challenges to the validity of the contract generally. See id. The second category encompassed challenges to the arbitration clause specifically. See id. The first category of challenges is for the arbitrator to decide, but the second, challenges to the arbitration clause, are for the court to decide and thus present a "question of arbitrability."[2] See id. This distinction largely turns on an interpretation of who the parties intended to decide the gateway matter. As the First Circuit has stated, "[t]he cornerstone here is an assumption about the intent of the contracting parties to an arbitration agreement." Kristian v. Comcast Corp., 446 F.3d 25, 38 (1st Cir. 2006). Thus, questions of arbitrability are present,

> in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

Howsam, 537 U.S. at 83-84; see also Kristian, 446 F.3d at 38. Where there is a question of arbitrability, the court is the appropriate decision-maker "unless the parties clearly and unmistakably provide otherwise." Kristian, 446 F.3d at 38 (quoting Howsam, 537 U.S. at 83).

Recently in Buckeye Check Cashing, Inc. v. Cardegna, the Supreme Court reiterated this classification and the role of the arbitrator and the court. 126 S. Ct. 1204, 1208 (2006). Nonetheless, in restating that the narrow category of gateway issues that present questions of arbitrability does not include challenges to the validity of a contract

---

[2] The question before the Court in Prima Paint Corp. was whether a challenge on the basis of fraud in the inducement was for the court or the arbitrator. 388 U.S. at 396. The Court held "if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the "making" of the agreement to arbitrate – the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." Id. at 403-04.

6

generally, the Supreme Court distinguished challenges to the validity of a contract from "the issue of whether any agreement between the alleged obligor and obligee was ever concluded." Id. at 1208 n.1. Furthermore, the Supreme Court stated that "[o]ur opinion today addresses only the former [challenges to the validity of a contract], and does not speak to the issue decided in the cases . . . which hold that it is for courts to decide . . . whether the signor lacked the mental capacity to assent." Id. (referring to Spahr v. Secco, 330 F.3d 1266, 1273 (10th Cir. 2003)). The distinction first articulated in Prima Paint Corp. regarding the appropriate role for the court and the arbitrator is not determinative on questions regarding the very formation of a contract. See Spahr, 330 F.3d at 1273 ("We conclude, therefore, that the analytical formula developed in Prima Paint cannot be applied with precision when a party contends that an entire contract containing an arbitration provision is unenforceable because he or she lacked the mental capacity to enter into the contract.").

The Court is mindful that the category of claims that rightfully invokes questions of arbitrability is narrow. Nonetheless, the First Circuit has stated that "a party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate some claims." McCarthy v. Azure, 22 F.3d 351, 354-55 (1st Cir. 1994); see also Campbell, 407 F.3d at 552 (discussing a dispute of "the most abecedarian of the four elements [required to compel arbitration under the FAA]: whether a valid agreement to arbitrate exists"). In Large v. Conseco Fin. Servicing Corp., 292 F.3d 49 (1st Cir. 2002), the First Circuit distinguished a challenge based on the rescission of a contract from a challenge to whether a contract had ever existed in implying that the latter was for the court. Id. at 53. The Court in Large cited approvingly

7

numerous other circuits that have held that "challenges going to the very existence of a contract that a party claims never to have agreed to" are for the court to decide. Id. at 53-54 (citing Three Valleys Municipal Water District v. E.F. Hutton & Co., Inc., 925 F.2d 1136, 1140 (9th Cir. 1991) and collecting cases from the Third, Seventh, Eight and Eleventh circuits). Thus, a challenge to whether a contract was ever validly concluded is for the court, and not the arbitrator, to decide. This is certainly the case, where, as here, the gateway issue is one designed to protect those incapable of forming a contract under the law. To hold such an individual to a contract that could not be legally formed is to deny the individual the very protection the law was designed to ensure. See Derocher v. Continental Mills, 58 Me. 217, 218 (Me. 1870) (stating that "[t]o compel the minor thus to make good the loss occasioned by the non-performance of his contract, is virtually to enforce the contract" where a minor agreed to work for a manufacturing corporation for at least six months and provide two weeks' notice but then left the employment early and without notice).

The gateway issue presented in this case falls into that narrow category of issues to be decided by the Court and not the arbitrator. In the present case, although Foss signed the application for employment, which contained an agreement to arbitrate, he contends that the agreement is unenforceable because he was an infant when he entered the contract and never ratified it in writing. The claim of infancy goes to the very existence of the contract and thus presents a question of arbitrability. See e.g., Derocher, 58 Me. at 221 (stating that "when an infant's contract is legally avoided, the rights of the parties are precisely the same as if it had never been made"). Because the parties have

not "clearly and unmistakably provide[d] otherwise," the Court will determine this gateway issue.

### C. Whether a Contract Was Ever Validly Formed

In determining whether a valid contract exists at all in a motion to compel arbitration, "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987); accord Campbell, 407 F.3d at 552. The Court thus looks to Maine law to determine whether the contract to arbitrate exists.[3]

The general law in Maine regarding the validity of a minor's contracts is clear: "No action shall be maintained on any contract made by a minor, unless he, or some person lawfully authorized, ratified it in writing after he arrived at the age of 18 years, except for necessaries or real estate of which he has received the title and retains the benefit." 33 M.R.S.A § 52. Since at least 1832, Maine has recognized the "infancy doctrine" and the need to protect minors. See Lawson v. Lovejoy, 8 Me. 405, 405 (Me. 1832). As the Law Court stated in 1947: "These disabilities of the minor are really privileges which the law gives him, and which he may exercise for his own benefit. The object is to secure him in his youthful years from injuring himself by his own improvident acts." Reed Bros., Inc. v. Giberson, 54 A.2d 535, 537 (Me. 1947). These same cases contain a warning to those who endeavor to contract with an infant: "Any person dealing with one who has not reached his majority, must do so at his peril." Id.

---

[3] In Plaintiff's Opposition to the Motion to Compel Arbitration and Circuit City's Reply, both parties assume that Maine law applies to the question of whether a contract was ever validly formed.

9

Circuit City acknowledges that Foss was less than eighteen years of age when he signed the agreement. Nonetheless, Circuit City maintains that the Agreement is valid because Foss ratified the contract after turning eighteen and Circuit City obtained the consent of Foss's parents.

Ratification of a contract by a minor in Maine stands in contrast to ratification under the common law. Whereas under the common law and in some states, a minor can ratify a contract by actions or by a failure to disaffirm, Maine requires the ratification to be in writing. 33 M.R.S.A § 52. To be effective, ratification "should be voluntary, not obtained by circumvention, not under ignorance of the fact that he was entitled to claim the privilege." Reed Bros., Inc., 54 A.2d at 538 (citing Thing v. Libbey, 16 Me. 55, 57 (Me. 1839)). In Reed Bros., Inc., the Law Court declined to find ratification of a promissory note where an infant had joined in a mortgage, in which he acknowledged that the mortgage was subject to the promissory note. Id. The Law Court stated that "[t]he ratification required by the statute must be something more than a recognition of the existence of the debt and the amount due thereon. It must be a deliberate written ratification." Id. (quoting Sawyer Boot & Shoe Co. v. Braveman, 136 A. 290, 291 (Me. 1927)). The ratification must also evidence a decision by the infant to be bound by the contract. See id. ("Ratification always resolves itself into a question of intention.").

Although Circuit City offers several forms of ratification, the Court finds each offer to be is insufficient. First, Circuit City maintains that Foss ratified the Agreement "[b]y completing and submitting daily time cards, upon which Circuit City relied and upon which Foss was paid . . . ." (Def.'s Reply to Mot. to Compel Arbitration (Docket # 15) at 7.) Mere completion and submission of a time card, is, at most, an

10

acknowledgement of the time actually worked; it does not evidence intent by the infant to be bound by an independent agreement to arbitrate. If a mortgage that contained an acknowledgement of the promissory note in Reed Bros., Inc., did not ratify the promissory note, the completion and submission of a time card cannot function to ratify an independent contract. See 54 A.2d at 538. In this situation, the Court is unable to state that punching and turning in a time card is a deliberate, voluntary and knowing written ratification of a separate agreement, which states "I agree to settle any and all previously unasserted claims . . . exclusively by final and binding arbitration."

Second, Circuit City claims that by continuing to work after turning eighteen, "Foss expressly consented to the Agreement." (Def.'s Reply to Mot. to Compel Arbitration at 7.) In Maine, action is insufficient for ratification absent a "deliberate written ratification." See Lamkin & Foster v. Ledoux, 64 A. 1048, 1049 (Me. 1906) ("The defendant's conduct after coming of age may have shown a sufficient ratification at common law, but there was no ratification in writing, and hence the statute bars the action.").

Finally, Circuit City claims that Foss ratified the contract by filing this lawsuit, "as the Agreement was an integral part of Foss's employment arrangement upon which he is now suing." (Def.'s Reply to Mot. to Compel Arbitration at 7.) This proposition misconstrues the nature of the lawsuit. Foss is suing on statutory grounds independent of the Agreement, not upon any provision or action under the contract. Furthermore, other courts have found in similar cases that the filing of a lawsuit for sexual harassment is repudiation of the contract, not ratification. See, e.g., Stroupes v. The Finish Line, Inc., No. 1:04-cv-133, 2005 U.S. Dist. LEXIS 6975, at *14 (E.D. Tenn. March 15, 2005) ("A

minor suing an employer for sexual harassment is not suing on the contract [for employment].").

Circuit City maintains that the Agreement is nonetheless enforceable because Circuit City obtained parental consent. As indicated previously, because Foss was under eighteen at the time he completed the online application for employment, he was required by the online application system to obtain parental consent. The name "Sharon Foss" appears in the application as having consented. (Ex. A to Docket # 16.) In affidavits attached to Plaintiff's Opposition to Compel Arbitration, both Andrew Foss and Sharon Foss state that parental consent was not obtained or given to the Agreement. Furthermore, there is no claim that parental consent was provided when Foss signed the hard copy of the agreement on October 14.

The only conclusion the Court is left with is that Foss entered his mother's name without obtaining her consent. This misrepresentation, however, will not act as an estoppel to prevent Foss from asserting his infancy. See Whitman v. Allen, 121 A. 160, 163-64 (Me. 1923) ("The only evidence of fraud is the false representation made by the plaintiff to the defendant that he was of age and had a right to trade. Such a false statement on the minor's part is held not to create an estoppel.") This immature and false representation is exactly why the law acts to protect the infant. As the Law Court stated in 1923: "It is simply the result of the improvidence of infancy which the law has always in mind." Id. at 163.

## III.     CONCLUSION

The Court finds that without written ratification, the Agreement never came into existence between Foss and Circuit City.[4] 33 M.R.S.A. § 52. Therefore, there is no agreement to arbitrate the dispute, and the Motions to Compel Arbitration and Stay the Proceedings are DENIED. (Docket #s 5 & 6.)

**SO ORDERED.**

                                                /s/ George Z. Singal
                                                Chief United States District Judge

Dated at Portland, Maine, this 5th day of February, 2007.

---

[4] The Court is aware of the hardship and difficulty this may place on those dealing with minors; nonetheless, given the strict adherence by the Law Court to the infancy doctrine, this Court is unwilling to strip the protections afforded the infant. See Mellot v. Sullivan Ford Sales, 236 A.2d 68, 74 (Me. 1967) ("We [the Law Court] feel that when social and economic changes require a further relaxation of common law limitations upon the contractual responsibility of minors, any modification of such a basic principle must come from the clearly expressed intentions of the Legislature.").